Nos. 08-55045, 08-55254
(Consolidated Appeal)

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ANTELOPE VALLEY HEALTH CARE DISTRICT,
a California Not-for-Profit Agency,

Plaintiff, Counter-Defendant & Appellee

v.

CITADEL PROPERTIES LANCASTER, LLC,
an Illinois Limited Liability Company,

Defendant, Counter-Claimant & Appellant.

---

ON APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
CV-06-06828 ODW (SHx) Honorable Otis D. Wright

---

**APPELLEE'S REQUEST FOR ATTORNEYS' FEES**

Judgment Issued: April 17, 2009
Panel: Canby, Rawlinson, and N.R. Smith

---

HOLLAND & KNIGHT, LLP
Paul C. Workman (CA SBN 94708)
633 W. Fifth St., Ste. 2100
Los Angeles, California 90071-2040
Telephone No.: 213-896-2400
Facsimile No.: 213-896-2450

HOLLAND & KNIGHT, LLP
Andrew T. Caulfield (CA SBN 238300)
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone No.: 415-743-6900
Facsimile No.: 415-743-6910

Attorneys for
Plaintiff, Counter-Defendant & Appellee
ANTELOPE VALLEY HEALTH CARE DISTRICT

# <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

I.      INTRODUCTION ........................................................................1

II.     JUDGMENT ON APPEAL IN FAVOR OF AV ...........................................3

III.    AV'S REQUEST FOR ATTORNEYS' FEES IS TIMELY…………………4

IV.     ARGUMENT................................................................................4

        A.      This Court—and Not the District Court—Should Decide AV's
                Request for Attorneys' Fees.................................................4

        B.      As the Prevailing Party on Appeal, AV Is Entitled to Its Fees
                Under Civil Code § 1717(a) ................................................8

        C.      Standard for Reviewing the Reasonableness of Fees...........................9

        D.      The Time Spent by AV Was Reasonable...........................................10

        E.      As the District Court Previously Determined, the Hourly Rates
                Charged by AV's Attorneys Were Reasonable ...................................13

        F.      Various Other Factors Support a Full Award of the Amount
                Requested ...................................................................15

                (1)     The Stakes for AV on Appeal and the Results Obtained
                        Justify a Full Award of the Amount Requested.......................15

                (2)     The Complexity of the Underlying Transaction and
                        Arguments Justify a Full Award of the Amount
                        Requested ..........................................................19

                (3)     AV Benefited From Having Experienced Appellate
                        Counsel Work on the Appeal.........................................20

V.      CONCLUSION.............................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Berkla v. Corel Corp.*,
302 F.3d 909 (9th Cir. 2002) ................................................................8

*Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*,
971 F.2d 272 (9th Cir. 1992) ...............................................................8

*Christensen v. Stevedoring Services of America*,
557 F.3d 1049 (9th Cir. 2009) .....................................................10, 15

*City of Burlington v. Dague*,
505 U.S. 557 (1992) .............................................................................9

*Davis v. City & County of San Francisco*,
976 F.2d 1536 (9th Cir. 1992) ...........................................................12

*Fischer v. SJB-P.D. Inc.*,
214 F.3d 1115 (9th Cir. 2000) .............................................................9

*Garfield v. Kirk*,
765 Barb. 464, 1873 WL 10016 (N.Y. Gen. Term 1873) ..................16

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ...........................................................................18

*Hsu v. Abbara*,
9 Cal. 4th 863 (1995) ...........................................................................8

*Jordan v. Multnomah City*,
815 F.2d 1258 (9th Cir. 1987) .......................................................9, 13

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) ......................................................................13

*Morales v. City of San Rafael*,
96 F.3d 359 (9th Cir. 1996) ..................................................................9

*Orn v. Astrue*,
  511 F.3d 1217 (9th Cir. 2008) ..........................................................................5, 6

*PLCM Group v. Drexler*,
  22 Cal. 4th 1084 (2000) ........................................................................................9

**STATUTES**

Cal. Civ. Code
  § 1717(a) .............................................................................................................4, 8
  § 1717(b)(1) ..............................................................................................................8

**OTHER AUTHORITIES**

Ninth Circuit Rules
  Rule 39-1.6..............................................................................................................1
  Rule 39-1.6(a), (b) .............................................................................................4, 11
  Rule 39-1.8 & 39-1.9 ............................................................................................4

# <u>MEMORANDUM IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES</u>

## I.    INTRODUCTION

Pursuant to Circuit Rule 39-1.6, Plaintiff, Counter-defendant and Appellee Antelope Valley Healthcare District ("AV"), hereby respectfully requests an award of its reasonable attorneys' fees incurred on appeal in the amount of $212,970.  On April 17, 2009, a panel of this Court, consisting of Circuit Judges Canby, Rawlinson and N.R. Smith, issued a judgment in favor of AV, affirming in full the district court's judgment, including the district court's award of contractual attorneys' fees.  As the prevailing party on appeal, AV is thus entitled, by contract and California law, to recover its reasonable attorneys' fees.

AV's requested fee amount is reasonable and proportionate in light of the catastrophic consequences AV would have suffered if it did not prevail on appeal. Just as it did at trial, Defendant, Counter-claimant and Appellant, Citadel Properties Lancaster, LLC ("Citadel"), argued on appeal for an interpretation of the complex contracts composing the parties' synthetic lease transaction that would have devastated AV while handing Citadel a spectacular unearned windfall worth over $20 million.  For AV, losing would have meant having to pay over $20 million to finance a new medical building, but not being able to possess or control the building until 2051, by which time its useful life would have been largely exhausted.  In contrast, for Citadel, winning would have meant getting to enjoy all

1

the economic benefits of owning the new building until 2051 without having to pay anything for it. Given the stakes, AV had no choice but to do whatever it took to win on appeal. In effect, it was forced to review carefully the parties' complex contracts and the record below, and to painstakingly prepare its brief and argument to ensure to the greatest extent possible that such a devastating and unacceptable outcome would not occur.

This Request is supported by the attached Declaration of Paul C. Workman ("Workman Decl."), AV's lead counsel on appeal, which establishes the reasonableness of the requested fees, as well as by the prescribed Form 9. In addition, the Request is supported by the actual invoices issued to and paid by AV in connection with the appeal, which provide a detailed itemization of each task performed by AV's outside counsel, including, for each task, the identity and billing rate of the timekeeper who performed the task, the date the task was performed, the time spent on the task, and the amount billed for the task. (Workman Decl., ¶ 5, Exh. A). Similarly, AV supports its request with separate spreadsheets for each timekeeper who worked on the appeal categorizing each task reflected in the invoices according to the categories required by Form 9. (*Id*., ¶¶ 7-8, Exhs. B, C).

## II.  JUDGMENT ON APPEAL IN FAVOR OF AV

In its appeal, Citadel challenged the district court's judgment awarding AV specific performance from Citadel under Section 5 of the parties' Support Agreement, and the district court's denial of relief to Citadel under Section 2 of the Support Agreement.  Citadel also appealed the district court's award of prevailing-party attorneys' fees to AV.  (*See* April 17, 2009 Court of Appeals Judgment ("Judgment"), p.2).  AV did not cross appeal.

On April 17, 2009, only four days after oral argument, the Court issued its Judgment.  The Court held that the "district court properly granted specific performance to Antelope Valley under Section 5 of the Support Agreement because the plain language of Section 5 obligated Antelope Valley to purchase the building once an event of default occurred."  (*Id.*, p.3).  The Court further ruled that "[b]ecause the Bank clearly and explicitly demanded that Citadel and Antelope Valley complete their respective obligations under Section 5, Citadel was obligated to sell the property to Antelope Valley as instructed."  (*Id.*).  Accordingly, the Court found that the district court "made no clear error concerning this issue in the factual findings made during the bench trial."  (*Id.*).

The Court also affirmed the district court's decision on Section 2, finding that the district court "also properly denied Citadel recovery under Section 2 of the

3

Support Agreement because Citadel's interpretation of Section 2 would 'lead to unfair or absurd results.'" (*Id.*, pp. 3-4).

Finally, the Court held that the district court "did not abuse its discretion in granting Antelope Valley attorneys' fees as the prevailing party under California Civil Code § 1717(a)," finding that AV "prevailed on its primary claim that the agreement required Citadel to sell the building to Antelope at the option price." (*Id.*, p.4).

## III.  AV'S REQUEST FOR ATTORNEYS' FEES IS TIMELY

This Request for Attorneys' Fees is timely.  As stated above, the Ninth Circuit issued its Judgment on April 17, 2009.  Citadel has not filed a petition for rehearing, and the time for filing a petition expired on May 1, 2009.  Accordingly, because this Request is being submitted within 14 days of the expiration of the time in which to file a petition for rehearing, this Request is timely under Cir. Rule 39-1.6(a).  (Workman Decl., ¶ 2).

## IV.  ARGUMENT

### A.    This Court—and Not the District Court—Should Decide AV's Request for Attorneys' Fees

Here, because it heard the appeal, the Ninth Circuit is in the best position to rule on AV's fee request.  AV therefore respectfully requests that the panel—and not the district court—rule on AV's request and determine the amount of the

award. Alternatively, this Court should grant the request and have the Appellate Commissioner make the determination of a reasonable fee.

The Ninth Circuit has the authority to issue an order awarding attorneys' fees. *See Orn v. Astrue*, 511 F.3d 1217, 1220-21 (9th Cir. 2008) (citing 9th Cir. Rules 39-1.8 and 39-1.9). The panel, however, has the discretion to select among several options: (a) it may make a determination as to an award of attorneys' fees itself; (b) it may grant the request and refer it to the Appellate Commissioner for a determination of the amount; (c) it may transfer the request to the district court on remand; or (d) it may defer selecting an option until additional information is available. *See Orn, supra,* 511 F.3d at 1220. In exercising its discretion, a panel may consider a variety of factors:

(1) whether the request is limited to attorney's fees and costs incurred on appeal;

(2) whether an appraisal of the worth of services rendered is a decision involving matters within the first hand knowledge of that court and coming within its special competence, warranting a greater degree of deference than appraisal of the worth of services rendered in another court;

(3) whether the complexity of the issues on appeal as compared with the record developed by the district court renders the district court or the court of appeals better situated to make determinations relevant to the consideration of the request;

(4) whether the nature of the panel's decision on the merits mitigates against transferring the request to the district court;

5

(5) whether the Appellate Commissioner, who has substantial experience and expertise in ruling on appellate fee requests, is best qualified to make factual determinations relevant to the request;

(6) whether, if a prevailing party requests fees for services provided both in the district court and on appeal, bifurcating consideration of the requests could result in significant and undesirable discrepancies in the awarded hourly rates;

(7) whether the prevailing party has requested an award of fees for the same work from another court;

(8) whether the district court is presently considering a request for fees in connection with district court proceedings;

(9) whether the panel anticipates that the prevailing party will make additional requests for fees incurred at the district court level; and

(10) whether a particular course of action will implement the Supreme Court's view that a request for attorneys' fees should not result in a second major litigation.

*Id.* (various citations omitted).

On balance, these factors tip overwhelmingly in favor of the Ninth Circuit determining whether to award AV its fees on this appeal and deciding the amount to be awarded—whether by the panel itself or the Appellate Commissioner. First, this request is limited to attorneys' fees incurred on appeal. Second, the panel is in the best position to appraise the worth of the services provided by AV's counsel. Third, as discussed below, the appeal involved *de novo* review of issues involving the interpretation of complex contracts, and thus was just as complex, if not more so, than the trial. Moreover, having heard the appeal, the Ninth Circuit is better

6

situated than the district court to assess any potential claims by Citadel that work performed on this appeal was unnecessary or unreasonable. Fourth, the Judgment was an unqualified victory in favor of AV, leaving no remaining issues to be determined by the district court and providing no reason to transfer the case back to the district court to determine the fee award. Fifth, if the panel itself declines to make the fee determination, the Appellate Commissioner, with substantial experience and expertise in ruling on appellate fee requests, would be better qualified than the district court to determine the fee award. Sixth, this Request seeks only the fees incurred by AV on appeal; the district court has already issued an award (affirmed by this Court) for the fees and costs associated with the underlying litigation. Seventh, AV has not made any request for its fees incurred on appeal in any other court. Eighth, no request for fees is pending in the district court; the district court has already issued its fee award. Ninth, there is no reason to anticipate that AV will have to make any additional requests for attorneys' fees incurred at the district court level. Finally, a decision by the panel and/or Appellate Commissioner would avoid any dispute in the district court about what happened on appeal.

For these reasons, this Court should decide AV's Request. There is simply no reason to send the matter to the district court.

**B.    As the Prevailing Party on Appeal, AV is Entitled to Its Fees Under Civil Code § 1717(a)**

A party who prevails on appeal is a prevailing party for purposes of California Civil Code section 1717(a), and is contractually entitled to recover the attorneys' fees and costs it incurred on appeal. *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 283 (9th Cir. 1992). "The prevailing party on the contract shall be the party who recovered the greater relief in the action on the contract." Cal. Civ. Code § 1717(b)(1). The prevailing party is determined by looking at the extent to which the parties have achieved their litigation objectives. *Hsu v. Abbara*, 9 Cal. 4th 863, 876-77 (1995); *Berkla v. Corel Corp.*, 302 F.3d 909, 920 (9th Cir. 2002).

Without question, AV was the prevailing party on this appeal. The Judgment issued by the Court on April 17, 2009 was an unqualified, complete victory for AV. The Court issued Judgment in favor of AV on all three issues which were the subject of Citadel's appeal: (1) it affirmed the district court's award of specific performance to AV under Section 5 of the Support Agreement; (2) it affirmed the district court's denial of recovery to Citadel under Section 2; and (3) it affirmed the district court's award to AV of its prevailing party attorneys' fees. Accordingly, AV is entitled to recover its attorneys' fees.

**C.** **Standard for Reviewing the Reasonableness of Fees**

In determining whether an attorneys' fees submission is reasonable, both federal and state courts use the "lodestar" approach. *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992); *Jordan v. Multnomah City*, 815 F.2d 1258, 1262 (9th Cir. 1987); *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). The court determines the "lodestar" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Dague, supra*, 505 U.S. at 559; *PLCM, supra*, 22 Cal. 4th at 1095. There is a "strong presumption" that the lodestar amount is reasonable. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119, n.4 (9th Cir. 2000).

After calculating the lodestar, a court can make adjustments, if necessary. *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996). Various factors are relevant to determining a reasonable fee, including: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation and ability of the attorneys; (9) the undesirability of the case; (10) the nature and length of the professional

relationship with the client; and (11) awards in similar cases. *See Christensen v. Stevedoring Services of America*, 557 F.3d 1049, 1053 (9th Cir. 2009).

## D. The Time Spent by AV Was Reasonable

AV's attorneys, Holland & Knight, worked and billed a total of 574.95 hours on this appeal. (Workman Decl., ¶ 9, Exh. D). This time is described in detail in the various invoices issued by Holland & Knight to AV in connection with the appeal, copies of which are attached as Exhibit A to the Workman Declaration. AV has paid all of the invoiced amounts. (*Id.*, ¶ 5, Exh. A).

AV's requested fee amount is not simply the total of the invoices. Counsel for AV has carefully reviewed the invoices to make sure the work described in the billing entries was necessary and reasonable. This review has resulted in the deduction of $7,317.50 from the invoice total to take into account possible inefficiencies or unnecessary duplication of effort.[1] All of the time for which AV seeks recovery was reasonably spent defending, and was necessitated by, Citadel's appeal. AV has been billed, and has had paid, for all of this time, and it is contractually entitled to be reimbursed.

---

[1] AV's counsel has deducted the time incurred by a paralegal (Kevin Nichols), the research time incurred by associate (Tianjing Zhang), and the entries associated with the filing of the Notice of Errata. (*Id.*, ¶ 6).

To comply with Rule 39-1.6(b), AV is submitting Form 9 with this Request, which categorizes all of the time for which AV is seeking compensation. (Workman Decl., ¶ 7, Exh. B). In addition, AV is submitting spreadsheets for each timekeeper detailing the tasks performed and the hours worked by task, and categorizing each task in accordance with the categories prescribed in Rule 39-1.6(b) and Form 9. (*Id*. ¶ 8, Exh. C). The spreadsheets are the basis for the totals set forth in Form 9.

AV is also submitting a summary spreadsheet setting forth the total number of hours actually worked and billed by AV's counsel, and the total number of hours that form the basis for this Request (i.e., the total hours worked and billed less the deductions made to take into account possible inefficiencies or unnecessary duplication). (*Id*., ¶ 9, Exh. D). AV is requesting only the "net" amount reflected on the summary spreadsheet. (*Id*.).

This appeal was appropriately staffed. (*Id*., ¶ 10). The vast majority of work was performed by two attorneys, one partner (Paul Workman), and one associate (Andrew Caulfield). (*Id*.). Mr. Workman, a litigation partner with more than 28 years of experience, was the lead counsel on appeal and dedicated the majority of his time to reviewing the trial record, developing the strategy on appeal, preparing the Answer Brief, and preparing for and attending oral argument. (*Id*.). Mr. Caulfield is a fourth-year associate whose primary tasks included

11

developing the appeal strategy, conducting the necessary research and analysis of Citadel's arguments, and preparing the initial draft of the Answer Brief. (*Id*., ¶ 11).

Two other partners (Matthew Vafidis and Stephen Taber) incurred minimal time assisting with this appeal. Mr. Vafidis, a litigation partner with over 26 years of litigation experience, was the lead trial counsel. His knowledge of the underlying documents and transaction and his familiarity with the trial record made his very limited involvement indispensable. (*Id*., ¶ 12). Mr. Taber, a corporate partner with over 34 years of experience, contributed invaluable expertise in financing transactions, including the type of conduit financing transaction at issue in this case. (*Id*., ¶ 13). Mr. Taber's input and analysis as to the purpose of conduit financing transactions in general, and his specific working knowledge of the conduit financing transaction at issue in this case, were crucial to AV's arguments on appeal. (*Id*.). The Request also includes time spent by a paralegal (Sharon Edwards) assembling the record and preparing AV's supplemental excerpts of record. (*Id*., ¶ 14).

AV is including in this Request the fees it has incurred in connection with the preparation of this Request, which, as of May 14, 2009, are estimated to be $11,037.50. (*Id*., ¶ 15). The Ninth Circuit has repeatedly held that time spent by counsel in establishing the right to a fee award is compensable. *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992) (vacated in part on

12

other grounds).  California courts are in agreement.  *See Ketchum v. Moses*, 24 Cal.

4th 1122, 1133 (2001) ("[A]bsent circumstances rendering the award unjust, an

attorney fee award should ordinarily include compensation for all the hours

reasonably spent, including those relating solely to the fee.").  Thus, AV is

properly entitled to recover its reasonable fees incurred preparing this Request.

**E.     As the District Court Previously Determined, the Hourly Rates Charged by AV's Attorneys Were Reasonable**

The reasonable hourly rate is that prevailing in the community for similar

work.  *Jordan, supra*, 815 F.2d at 1262-63.  The district court has already found

that the rates charged by AV's counsel were "reasonable."  (January 28, 2008

[District Court] Order Granting Plaintiff's Motion for Attorneys' Fees, ER-001,

ER-003).  Citadel did not argue on appeal that the rates charged by AV's counsel

were unreasonable.  The rates found by the district court to be reasonable were as

follows:

| Attorney/Paralegal | Title/Experience | Pre-Oct. '07 Rate | Oct. '08 – Oct. '09 Rate[2] |
|---|---|---|---|
| Stephen Taber | Ptr (33 yrs) | $500 | $500 |
| Matthew Vafidis | Ptr (25 yrs) | $475 | $575 |
| Paul Workman | Ptr (27 yrs) | $475 | n/a |
| John Compagno | Ptr (13 yrs) | $430 | $485 |
| Kregg Koch | Assoc (3 yrs) | $275 | n/a |

---

[2]  Holland & Knight customarily adjusts its rates in October of each year, if
necessary.  It increased its rates in October 2007 (*See* ER-409-411) and again in
October 2008 (Workman Decl., ¶ 20).

13

| Andrew Caulfield | Assoc (2+ yrs) | $225 | $325 |
| Jennifer Millier | Clerk/Assoc | n/a | $250 |
| Sharon Edwards | Paralegal (3 yrs) | $180 | $200 |

(*See* ER-409-410).

The hourly rates on appeal of the Holland & Knight timekeepers whose time

is included in this Request, differ only moderately from those already approved:

| Attorney/Paralegal | Title/Experience | Rate (Pre-Oct. '08) | Rate (Post-Oct '08) |
|---|---|---|---|
| Paul Workman | Ptr (28 yrs) | $500 | $520 |
| Matthew Vafidis | Ptr (26 yrs) | $525 | $550 |
| Stephen Taber | Ptr (34 yrs) | $475 | $495 |
| Andrew Caulfield | Assoc (3+ yrs) | $300[3] | $335 |
| Sharon Edwards | Paralegal (4 yrs) | $180 | $175[4] |

(Workman Decl., ¶ 17).

As further evidence that the hourly rates charged for the work on appeal are

well within prevailing rates in the community, AV is submitting a 2008 Billing

Rate & Associate Salary Survey completed by PricewaterhouseCoopers.  (*Id*., ¶ 19,

Exh. E).  This is an update of the survey AV submitted in the district court.  (*See*

ER-410).  The Survey compares the billing rates of 44 large firms with offices in

---

[3]  Mr. Caulfield's rate was mistakenly set at $325/hr, rather than $300/hr, for time
incurred between May 1, 2008 and May 19, 2008.  The total amount requested
herein has been adjusted accordingly.  (*Id*., ¶ 6).

[4]  It appears that Ms. Edwards hourly rate was inadvertently adjusted downward
from $180-$175/hr.  (*Id*., ¶ 18).

San Francisco. (Workman Decl., ¶ 19, Exh. E). It clearly shows that Holland & Knight's rates on appeal are below the median, and in fact, most are in the bottom third of the firms surveyed. (*Id*.). For example, Mr. Caulfield is a graduate of the Class of 2005. Based on the 2008 Survey, taken as of January 1, 2008, Mr. Caulfield's pre-October 2008 billing rate of $300/hr is in the bottom third and his post-October 2008 rate of $335/hr is significantly less than the median billing rate of $360/hr for associates in the Class of 2005 as identified on the Survey. Even with the post-October 2008 increase, Holland & Knight's rates remained well below those charged by other national firms against which Holland & Knight competes. (*Id*., ¶ 20).

It is beyond dispute that the rates charged by AV's counsel for their work on this appeal are reasonable.

**F.  Various Other Factors Support a Full Award of the Amount Requested**

> **(1)  The Stakes for AV on Appeal and the Results Obtained Justify a Full Award of the Amount Requested**

As mentioned in Section III C above, in addition to the "lodestar" amount, courts may consider various other factors when determining the amount of fees to be awarded. *See Christensen v. Stevedoring Services of America*, 557 F.3d 1049, 1053 (9th Cir. 2009). AV submits that the most important of these factors are the amount at stake and the results obtained.

The amount of money or the value of the property at issue has been frequently discussed by the courts as a significant factor to be considered in assessing fees for legal services. Robert L. Rossi, 1 Attorneys' Fees § 5:6 (3d ed.) (2008). As one court has stated:

> "It requires no greater labor to draw a complaint or answer, or to render any other specific service, in a case in which the amount involved is $1,000,000, than in one in which it is $100. And yet, every lawyer knows that the labor bestowed upon a case is, as a general rule, in proportion to the magnitude of the interest involved. While the labor in drawing a pleading may be no more when the amount involved is large than when it is small, yet the labor in the examination of authorities and documents preliminary to drawing it, and the care bestowed upon the pleading itself, would be much greater in one case than in the other. This extra care and labor must be compensated; and it may be measured with some degree of accuracy by the amount involved in the suit."

*Id.* (citing *Garfield v. Kirk*, 765 Barb. 464, 1873 WL 10016 (N.Y. Gen. Term 1873)).

Here, AV's requested fee amount is reasonable and proportionate when compared to the drastic adverse consequences threatened by Citadel's appeal. The interests of the parties, and the amount of work required by each on this appeal, could not have been more different.

For Citadel, there was a huge potential upside and only minimal downside. As a result of its sale of the medical building to AV as ordered by the district court, Citadel had already recovered its bargained-for fees and return-on-investment. Its contractual expectations and benefits had been fully realized. Nevertheless, it

16

pursued this appeal in the hope of a achieving a huge $20 million-plus windfall. Its strategy, both in the trial court and on appeal, was to make overly simplified and misleading arguments about complex contracts in the hope that the court might get confused and make a mistake (as nearly happened in the trial court). Had it succeeded, Citadel would have potentially received a $20 plus million payment from AV and retained long term use and enjoyment of a $20 million medical office building that AV had developed and financed—undeserved windfalls clearly not contemplated in the parties' agreement. If it lost, it was only at risk for attorneys' fees. Thus, Citadel had the option of spending as little or as much time as it pleased on its appeal, with the potential of a huge multi-million dollar windfall clearly outweighing the risk of a few hundred thousand in attorneys' fees. (Workman Decl., ¶ 21).

In stark contrast, a loss for AV on this appeal would have had devastating consequences. Had Citadel prevailed, AV would have been deprived, until 2051, of any economic benefit from the new medical office building it paid in excess of $20 million to develop and construct. This potential outcome represented an unmitigated disaster which had to be avoided at all cost. As a consequence, AV was forced to mount a full-scale defense, leaving no potential argument of merit unturned. It thus had to carefully review the record, including the multiple complex agreements that composed the parties' synthetic lease transaction; it had to

17

dissect and research Citadel's arguments; and it had to painstakingly draft the Answer Brief—all in order to prevent such a disastrous outcome. Given the amount at stake, the amount of legal expense AV incurred on appeal was reasonable and proportionate. Considering it fully appreciated the stakes and intentionally put AV in the position of having to aggressively defend the appeal, Citadel can hardly be heard to complain about the fees it knew it would be liable for if it lost. (Workman Decl., ¶ 22).

In addition to the amount at stake, the Court should consider the results obtained. Fortunately, this Court agreed with AV that Citadel's interpretation of the contract between the parties was "would lead to unfair or absurd results" and Citadel's proposed outcome would be "completely at odds with the intention of the parties." (Judgment, p. 4). Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The fact that AV raised alternative grounds to affirm the district court's decision should not result in any negative adjustment to the requested fee: "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id*. AV has fully prevailed on this appeal and should be awarded the entire amount requested.

18

### (2) The Complexity of the Underlying Transaction and Arguments Justify a Full Award of the Amount Requested

In determining the fee amount, the Court should also consider that the conduit financing transaction at the heart of this appeal was very complex and consisted of numerous supporting and operating agreements and documents. Only by piecing together all of the agreements did the structure and purpose of the transaction become apparent. The Excerpts of Record and Supplemental Excerpts of Record spanned over 840 pages. The appeal required careful and detailed study and analysis of these documents to gain an understanding of how each of the various agreements involved in the transaction worked independently and how each formed part of the larger transaction. (Workman Decl., ¶ 23).

Furthermore, AV was required to incur substantial amounts of time addressing Citadel's confusing and ever-changing arguments. In its Opening Brief, Citadel sought a $20 million-plus judgment as well as legal and beneficial use of the property for forty more years. In their Reply Brief, however, Citadel came up with a "formula" under Section 2 of the Support Agreement for a wind-up of the transaction in which they would "net" a multi-million judgment, albeit not for the $20 million plus sought in the Opening Brief. (*See* Citadel Reply Brief, pp. 11-12). AV's counsel had to spend additional time proving that, similar to the request for $20 million plus and the property, the transaction documents did not support

19

Citadel's formulas and arguments as to how it could be entitled to millions of dollars despite investing only $615,000.  (Workman Decl., ¶ 24).

### (3) AV Benefited From Having Experienced Appellate Counsel Work on the Appeal

Considering the amount at stake and the complexity of the issues, I believe the handling of this appeal benefited from my significant appellate experience, including my experience before the Ninth Circuit.  The briefing was effective.  At argument, it was readily apparent that the panel had a thorough understanding of the underlying transaction and the parties' positions on appeal.  The Court issued its order affirming in full the district court judgment only four days after argument. (Workman Decl., ¶ 25).

## V.  CONCLUSION

For all of the foregoing reasons, AV respectfully requests an award from this Court for its reasonable attorneys' fees expended to successfully defend and prevail on this appeal in the amount of $212,970.

Respectfully submitted,

Dated:  May 15, 2009          Holland & Knight LLP

/s/ Paul C. Workman
                                        Paul C. Workman

Attorneys for Plaintiff, Counter-defendant and Appellee Antelope Valley Health Care District

20

## <u>DECLARATION OF PAUL C. WORKMAN</u>

I, Paul C. Workman, declare as follows:

1.    I am an attorney at law, licensed and admitted to practice before all of the state and federal courts in California, including the United States Court of Appeals for the Ninth Circuit.  I am a partner in the law firm of Holland & Knight, LLP, attorneys of record for Plaintiff, Counter-defendant and Appellee Antelope Valley Health Care District ("AV") in the above-entitled matter.  I am the attorney at my firm responsible for the handling of this appeal.  I am submitting this declaration in support of AV's Request for Attorneys' Fees ("Request").  I have personal knowledge of the facts stated herein.

2.    The Request is timely.  The Ninth Circuit issued its Judgment on April 17, 2009.  Citadel has not filed a petition for rehearing, and the time for filing a petition expired on May 1, 2009.  Accordingly, because this Request is being submitted within 14 days of the expiration of the time in which to file a petition for rehearing, this Request is timely under Cir. Rule 39-1.6(a).

3.    As lead appellate counsel in this matter, I was in charge of staffing the matter and delegating assignments related to the appeal.  At all relevant times during the course of the appeal, I had first hand knowledge of the work being performed by Holland & Knight attorneys and paralegals.

4.     AV is seeking to recover $212,970 in fees pursuant to this Request. This amount is based upon the time actually worked on the appeal by me and other Holland & Knight professionals, and the amount actually billed to, and paid by, AV.  As I explain below, this amount represents a reasonable fee for the work performed on this appeal, particularly in light of the successful results obtained and the calamitous result to AV if it had lost the appeal.

5.     In preparing this Request, I reviewed all of the invoices my firm has issued to AV in connection with our work on the appeal, all of which, I am informed and believe, have been paid in full by the client.  I also reviewed the invoices before they were issued to the client to make sure that they accurately and fairly set forth the actual time worked by Holland & Knight professionals on the appeal.  Attached hereto as Exhibit A are true and correct copies of the actual invoices submitted to date by Holland & Knight to AV for fees incurred relating to this appeal.  The total amount of fees billed to AV, as reflected in these invoices, is $220,287.50.

6.     After reviewing the invoices, I deducted $7,317.50 from the invoice total to take into account what I felt were possible inefficiencies or unnecessary duplication of effort.  The deductions include (a) the removal of entries by our Senior Paralegal Kevin Nichols and research performed by Associate Tianjing Zhang; (b) the removal of entries by all timekeepers relating to the filing of a

22

Notice of Errata; and (c) the adjustment to Mr. Caulfield's hourly rate for the period of May 1, 2008 to May 19, 2008 from $325/hr to $300/hr. Mr. Caulfield's rate was mistakenly billed at $325 during that period. Entries billed at this rate during the time period were adjusted and resulted in a $25 deduction. Deducting $7,317.50 from the invoice total of $220,287.50 results in $212,970, which is the amount of this Request.

7. Attached hereto as Exhibit B is the Court's Form 9: Application for Attorneys Fees which categorizes all of the time for which AV is seeking compensation. The "Other" category includes work relating to (a) the motion to extend time for filing AV's Answer Brief; (b) the motion to supplement the record; (c) work performed in preparing the cost bill; and (c) work relating to the preparation of this Request.

8. In addition to Form 9, we have prepared spreadsheets for each timekeeper who worked on the appeal detailing the tasks performed and the hours worked by task, and categorizing each task in accordance with the categories required by Form 9. The spreadsheets are the basis for the totals set forth in Form 9. Attached hereto as Exhibit C are the individual spreadsheets for each attorney and paralegal who worked on this appeal. They were prepared under my supervision and direction.

23

9.     Attached hereto as Exhibit D is a summary spreadsheet setting forth the total number of hours actually worked and billed by AV's counsel (574.95), and the total number of hours that form the basis for this Request (i.e., the total hours worked and billed less the deductions identified in Paragraph 6), or 544.25 hours. AV is requesting only the "net" amount reflected on the summary spreadsheet, or $212,970.

10.     I believe that this appeal was appropriately staffed.  The vast majority of work on this appeal was performed by two attorneys—myself and an associate, Andrew Caulfield.  As a litigation partner with 28 years of litigation experience, including numerous appellate matters and experience before the Ninth Circuit, I was the lead attorney on this appeal.  The majority of my time was dedicated to reviewing the trial record, developing the strategy on appeal, preparing the Answer Brief, and preparing for and attending oral argument.  I billed a total of 226.25 hours for work performed on this appeal.  This work consisted primarily of developing our appeal strategy, preparing the Answer Brief, and preparing for and attending oral argument.  A detailed breakout of my time is set forth in the spreadsheet under my name that is included in Exhibit C.

11.     Andrew Caulfield, a fourth-year associate with the firm, was the associate on this appeal.  He was also involved in the district court trial.  Mr. Caulfield's primary tasks included working with me to develop strategy,

24

conducting the necessary underlying legal research and analysis of Citadel's arguments on appeal, preparing the initial draft of the Answer Brief, and overseeing the work of the paralegal who assembled our supplemental excerpts of record. Mr. Caulfield billed a total of 238.6 hours for work performed on this appeal. A breakout of his time is included in his spreadsheet in Exhibit C.

12. Two other partners helped with the appeal. Matthew Vafidis, a partner with 26 years of experience, was the lead trial counsel. His knowledge of the underlying documents and his familiarity with the trial record made his very-limited involvement indispensable. He spent a total of 21.1 hours on this matter, which was mainly devoted to explaining what had transpired at trial, analyzing the arguments made by Citadel on appeal, analyzing the transaction documents, and providing comments on drafts of the Answer Brief. His detailed time entries are set forth in his spreadsheet in Exhibit C.

13. Stephen Taber is a corporate partner with over 34 years of experience and expertise in financing transactions, including the kind of financing transaction that was at issue in this case. Mr. Taber's input and analysis as to the purpose of conduit financing transactions in general, and his specific working knowledge of the conduit transaction at issue here were crucial to AV's arguments on appeal. He spent a total of 15.7 hours on the appeal, which consisted of providing analysis of

25

the transaction and commenting upon drafts of the Answer Brief. His time is detailed in the spreadsheet under his name in Exhibit C.

14. Sharon Edwards, a certified paralegal since 1999 with 4 years of relevant paralegal experience, primarily assisted with the assembly of the record and preparing AV's supplemental excerpts of record. She billed a total of 46.6 hours, which is described in detail in Exhibit C.

15. The amount of fees being sought includes fees incurred in connection with the preparation of this Request. As reflected in my spreadsheet in Exhibit C, I spent a total of 0.7 hours on this Request in April. I estimate that I have spent an additional 5 hours preparing this Request through May 14, 2009. Mr. Caulfield's spreadsheet indicates that he spent 9.1 hours of work relating to this Request in April, and we estimate that he has spent an additional 15 hours preparing the Request through May 14, 2009. Thus, I estimate that we have spent a total of $11,037.50 preparing this Request [24.1 hours x $335 ($8073.50) + 5.7 x $520 ($2964.00) = $11,037.50]. The time spent preparing this Request in May has been added to the "Other" category on Form 9 and to the "Other" category on the Exhibit D summary chart.

16. The hourly rates Holland & Knight has charged for its work on this appeal are set forth in the invoices and in the spreadsheets attached as Exhibit C. These rates are well within what are considered to be the prevailing rates being

charged for similar work by national law firms with offices in San Francisco and Los Angeles.

17.     We billed for our work on appeal in accordance with our customary rates. The applicable rates for those timekeepers whose time is included in this Request are as follows:

| Attorney/Paralegal | Title/Experience | Rate (Pre-Oct. '08) | Rate (Post-Oct '08) |
|---|---|---|---|
| Paul Workman | Ptr (28 yrs) | $500 | $520 |
| Matthew Vafidis | Ptr (26 yrs) | $525 | $550 |
| Stephen Taber | Ptr (34 yrs) | $475 | $495 |
| Andrew Caulfield | Assoc (3+ yrs) | $300 | $335 |
| Sharon Edwards | Paralegal (4 yrs) | $180 | $175 |

18.     In October 2008, it appears that Ms. Edwards hourly rate was inadvertently adjusted downward from $180/hr to $175/hr. This means that her time was actually billed at a rate lower than it should have been.

19.     I am attaching as Exhibit E a true and correct copy of the 2008 Billing Rate & Associate Salary Survey completed by PricewaterhouseCoopers. This is an update of the survey we submitted in the district court (*See* ER-410). The Survey compares the billing rates of 44 large firms with offices in San Francisco. It clearly shows that the rates charged by Holland & Knight for its work on the appeal are below the median, and in fact, most are in the bottom third of the firms surveyed.

27

20.     Each year, Holland & Knight evaluates, and adjusts if necessary, its billing rates in light of various factors.  Holland & Knight implemented very modest rate increases in October 2007 and October 2008.  Even with these increases, our rates remained well below those charged by other national firms against whom we compete.

21.     Given the amount at stake for AV on this appeal, I believe that the amount requested is reasonable.  The risk-reward scenario for the parties could not have been more different.  Citadel's potential upside was huge and its downside minimal.  As a result of its sale of the medical building to AV as ordered by the district court, Citadel had already recovered its bargained-for fees and return-on-investment.  Its contractual expectations and benefits had thus been fully realized.  Nevertheless, it pursued the appeal in the hope of a achieving a huge $20 million-plus windfall.  Its strategy, both in the trial court and on appeal, was to make overly simplified and misleading arguments about complex contracts in the hope that the court might get confused and make a mistake (as nearly happened in the trial court).  If successful, Citadel would have potentially received a $20 plus million payment from AV and retained long term use and enjoyment of a $20 million medical office building that AV had developed and financed—undeserved windfalls clearly not contemplated in the parties' agreement.  If it lost, it was only at risk for attorneys' fees.  Thus, Citadel had the option of spending as little or as

28

much time as it pleased on its appeal, with the potential of a huge multi-million dollar windfall clearly outweighing the risk of a few hundred thousand in attorneys' fees.

22.     In stark contrast, a loss for AV on this appeal would have had devastating consequences.  Had Citadel prevailed, AV would have been deprived, until 2051, of any economic benefit from the new medical office building it paid in excess of $20 million to build.  This potential outcome represented an unmitigated disaster which had to be avoided.  As a consequence, it was imperative to mount a full-scale defense, leaving no potential argument of merit unturned.  We thus had to carefully review the record, including the multiple complex agreements that composed the parties' synthetic lease transaction, dissect and research Citadel's arguments, and painstakingly draft the Answer Brief—all in order to prevent such a disastrous outcome.  Given the amount at stake, the amount of legal expense AV incurred on appeal was reasonable and proportionate.

23.     The conduit financing transaction at the heart of this appeal was very complex and consisted of numerous supporting and operating agreements and documents.  Only by piecing together and explaining all of the agreements was the structure and purpose of the transaction apparent.  The Excerpts of Record and Supplemental Excerpts of Record spanned over 840 pages.  The appeal required careful and detailed study and analysis of these documents to gain an

understanding of how each of the various agreements involved in the transaction worked independently and how each formed part of the larger transaction.

24.     Citadel's arguments throughout this appeal were confusing and ever-changing.  In its Opening Brief, Citadel sought a $20 million-plus judgment as well as legal and beneficial use of the property for forty more years.  In its Reply Brief, however, Citadel came up with a "formula" under Section 2 of the Support Agreement for a wind-up of the transaction in which they would "net" a multi-million judgment, albeit not for the $20 million plus sought in the Opening Brief.  We were required to spend additional time proving that, similar to the request for $20 million plus and the property, the transaction documents did not support Citadel's formulas and arguments as to how it could be entitled to millions of dollars despite investing only $615,000.

25.     Considering the amount at stake and the complexity of the issues, I believe the handling of this appeal benefited from my significant appellate experience, including my experience before the Ninth Circuit.  The briefing appears to have been effective.  At argument, it was readily apparent that the panel had a thorough understanding of the underlying transaction and the parties' positions on appeal.  The Court issued its order affirming in full the district court judgment only four days after argument.

30

26.     Based on my review of the invoices and the documents submitted herewith, the figures and information identified in this Declaration and the accompanying Request are true and accurate.

I declare under penalty of perjury and pursuant to the laws of the United States of America that the foregoing is true and correct.  Executed on May 15, 2009 in Los Angeles, California.


/s/  Paul C. Workman
                    Paul C. Workman

## CERTIFICATE OF SERVICE

I, the undersigned, certify that I am employed by a member of the bar of this Court in good standing and counsel of record for Appellant Antelope Valley Health Care District. I am a citizen of the United States, a resident of the State of California, over the age of eighteen, and not a party to the within action.

I hereby certify that on May 15, 2009, I served documents in Case Nos. 08-55045and 08-55254 (Consolidated Appeal) entitled:

### APPELLEE'S REQUEST FOR ATTORNEYS' FEES

on each of the parties to this action at the following address:

> SEYFARTH SHAW LLP
> Todd C. Hunt
> Yuliya I LaRoe
> 2029 Century Park East, Suite 3300
> Los Angeles, California 90067-3063

**BY FEDERAL EXPRESS:** I caused a true and correct copy of each document to be placed in a sealed Federal Express Envelope, and picked up by FEDERAL EXPRESS, with whom this firm has an ongoing account and placed the envelope for collection. Federal Express is collected daily at my office.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed May 15, 2009, at San Francisco, California.

/s/ _____
Beverley Huppert

# 6310210_v3